The next matter, number 25-1417, David Hellman et al. v. Mass Dep't of Elementary and Secondary Education et al. At this time, would counsel for the appellants please come to the podium and introduce themselves and the record speak in. Good afternoon, my name is David Hodges, I am the counsel for Ariella and David Hellman and their son E.H. as well as Josh and Miriam Harrison and their son H.H. I'd like to request a two minute rebuttal. You may. Thank you. The district court's dismissal of this case should be reversed. A state need not establish a generally available public benefit program, but if it does, it may not discriminate in its provision of those benefits to those who exercise a fundamental constitutional right. Massachusetts has established a generally available public benefit program. It provides special education services to all children with special needs in their regular educational environment, but it diminishes the benefit solely for children whose parents send them to private school, a fundamental constitutional right conferred in Peers versus Society of Sisters. Unlike every other beneficiary, these children are banned from receiving services on their school grounds. The government bases this restriction on a constitutional provision that institutionalizes discrimination against private schools. The restriction is the same kind of discrimination that the U.S. Supreme Court condemned in Carson discrimination that this court denounced in Gary S. v. Manchester School District. As this court put it with respect to the free exercise rights in that case, when public benefits available to all are denied based on a constitutional right, the denial is unconstitutional. Here appellants have plausibly alleged that this restriction violates their rights under the due process and equal protection clauses of the 14th Amendment. The district court should be reversed. The government as well as the district court relied in large part on this court's decision in Gary S., but the situation here is fundamentally different from that in Gary S. In Gary S., private school parents challenged the federal IDEA's provision of special education services solely to public school students. The court held that because the parents did not have an entitlement to services in the first place, they were not being deprived of services because of the exercise to right. The court distinguished between, quote, services available to all, and it pointed to cases like Schubert and Hoppe, and those provided, quote, solely to public school students. By contrast, the statute here makes services available to all, and it is only the regulation that carves out an exception for parents who exercise their peer's right. This is discrimination based on a right. It is also an unconstitutional condition, and the U.S. Supreme Court has repeatedly held that when a state creates a benefit for all, it cannot condition or reduce that benefit for those who exercise a constitutional right. It does not matter if the right... If it makes the benefit available to all, I mean, your only complaint is that it doesn't do it in a convenient way for children who attend private schools, but it doesn't deprive them of the service. Yes, and by imposing this place restriction on our parents and on our children, it penalizes them for their exercise of the right. This is a restriction that doesn't apply to anyone else. Every student who is entitled to the benefit is entitled to receive services in the regular educational environment, but under the regulation, only students whose parents have exercised a fundamental right may not receive the services on their private school grounds. Instead, they must travel across town, be carted away from their schools every single day, and their parents... You can either look at it as a penalty or a less convenient manner for them to have the service provided to them. And again, the penalty only exists for people who have exercised a constitutional right. And when you look at the Supreme Court's unconstitutional conditions cases, what it says over and over again is that all that matters is that there's a tendency to inhibit the exercise of the right and it doesn't matter if the restriction is absolutely... It constitutes an absolute denial or an indirect denial. Here this is a direct denial. And because of this, our parents have chosen... Have determined that it is unfeasible for their children to get educational services. So all children need to be in school full-time and kids with special needs particularly to be in school for all day. But because of this restriction, our students must be taken out of their schools repeatedly, multiple times per day, multiple times per week, just so they can access services that the state says that they need. That's a penalty on... Let me ask you a different question. You rely heavily on the statutory definition of least restrictive environment, but when that's used in the statute itself, it seems to mostly or maybe only or always apply to the public school setting. What are we to make of that? I don't agree that it only applies to kids in the public school setting. In fact, it specifically says the educational placement that assures the maximum appropriate children with disabilities, including children in public or private institutions, are educated with children who are not disabled. So this is a benefit that is uniformly applied across the board, whether kids are in public schools or private schools. Do appellees also... I think they argue that state law can't create a fundamental right for substantive due process purposes. What is your response to that argument? This is not a case that involves that at all. When Massachusetts chose to create this benefit, it extended it to all people and then it carved out a restriction against people who exercise a constitutional right. It can't be that once the state creates a benefit and then carves out a restriction for people to exercise a constitutional right, that there's some kind of hack that exists in the system that says, okay, well, this is a substantive due process right, so therefore you can discriminate or have an unconstitutional condition. It couldn't be that if the right otherwise restricted your free speech rights and your right to marriage, say, that it would be unconstitutional for the purposes of the free speech right, but not unconstitutional for the purposes of your right to marry or right to vote or whatever have you. Let me ask you a question. Your clients, let's say, E.H. and H.H. were to prevail and they go to different schools, am I correct? Correct. Okay, so the state would be required to provide in E.H.'s school these services and in H.H.'s schools the same services individually. Now, I'm sure that if we rule that way, there's going to be hundreds, there's probably thousands of children in that same position and the impact to the state would be that in probably every private school, you'd end up having not just them too, you'd be having everybody literally having to have that and let me say that, at least I know, I'm almost certain in Puerto Rico, my former district, there's a very similar provision to the one the state of Massachusetts has. So this is something that can even have an impact beyond the state. So do you have anything to say about that? Should we take that into account? Can the state or, no, wait a minute, can the state take that into account? And again, it's providing the services, but outside of the school they're trying to reach some happy medium or it's either all or nothing. The fiscal impact, in other words, of the state having to provide to every private school in the commonwealth these services? Well, what I will say is that the statute already requires that. It's only the regulation that restricts it. These children are already entitled to these services and so under the current system, these children can access services basically anywhere in Massachusetts except for the private schools they attend. There is the restriction talks about students being able to access services in any public or neutral site. So that basically means anywhere in Massachusetts except for these schools. So under the statute, again, they're already entitled to these services. If the parents can, at their own cost, take their kids to these places, then they can get access to the services. So it's not really making much of an added burden for the state just to have their paraprofessional, for example, just go to the private school instead. So I think it's just fulfilling what the legislature originally intended back in 1972. Even if the impact is basically if this were to bankrupt the state, it's still ... That's what the law requires. And I think that's a decision that the Massachusetts legislature can address. That's the decision that it made when it created the program in the first place and created this program that was the progenitor for the IDA. And it says specifically in the 1972 statute that its intent was to provide these services to all students. I'd like to just talk a little bit more about Carson. So in Carson, Maine allowed kids to use a voucher to go to any public school and most private schools, even nominally religious schools. And it was only kids who attended sectarian schools who faced a restriction. And that's the kind of ... And when the Supreme Court denounced it, it denounced it in the same kind of ways that demonstrate the constitutional deficiency of the regulation that we're hearing today. In Massachusetts, all kids are entitled to a benefit, but only kids whose parents exercised their peer strike don't get it on equal terms. And under the regulation, the services can be provided in any educational environment except for private schools chosen by a student's parents. And so the only difference here with Carson is that whereas Maine defined the benefit to exclude people who chose a religious education, Massachusetts has defined the benefit to exclude people who choose a private education, which again is a choice that is protected by the federal constitution. It's a fundamental federal constitutional right. And Massachusetts can't do that. It can say we're only providing this benefit to public school students, but it can't say we're providing a benefit across the board to everyone except those who exercise a fundamental constitutional right. And this is something that I think the United States Supreme Court in the case Espinoza versus Montana Department of Revenue spoke about when in reference to a state constitutional provision that purportedly required discrimination on the basis of constitutional right, the court said that when the court or the government was called upon to apply a state law in a manner that violated the federal constitution, it was obligated to reject the invitation. Let me ask you, I guess, I reviewed the amicus brief that was filed by the Defense of Freedom Institute and interesting on pages 21, 22, they analogize the situation of the Brown versus Board of Education. Do you have anything to say because neither you nor the State Department or the State rely on Brown, but it's a point that's been made by the amicus. I honestly don't recall what they said specifically about Brown. All I'll say is that once you have a benefit that you extend to all people... Well, basically what you're saying is the Supreme Court held that this unequal treatment violated rights under the Equal Protection Clause concluding that an educational opportunity as here, where the state has undertaken to provide it is a right which must be made available to all on equal terms. Here too Massachusetts must make on-site special education available to parents and children as it does for those whose parents do not exercise their constitutional right to choose a private school. Yeah, to the extent that we allege, I think we plausibly allege that this restriction not only violates our rights under the Due Process and Equal Protection Clause, but we also violate it under the Equal Protection Clause. And it violates our client's rights because it singles out a class of people, a class of people who are actually defined by their exercise of a constitutional right and denies their disabled children the benefit on the same terms as those who are like them in every other relevant respect. Appellees try to address this by saying that the comparators are really not comparators, but I think that their reasoning is inept. To start, the statute does not delineate in any way differential treatment for public school students or private school students. It doesn't delineate different treatment between private school students placed there by the government and private school students placed there by parental choice. It says that all children are statutorily entitled to a special education program to meet their needs that is provided in their regular educational environment to the maximum extent appropriate. And that's 71B section 1. It doesn't distinguish between them, and it also doesn't say that one group of students shall receive lesser treatment. The statute is exactly the same for everyone, but under the regulation, there's a class of people who don't get it in the same kind of way. And I don't think that any prudent person would doubt that the benefit is the same. Oh, I'm sorry. Please finish. Okay. The regulation is a straight denial based on a right, and as the Supreme Court explained in Rummer, it's a special disability that makes it more difficult for one group of citizens than all others to seek aid from the government. It is a denial of equal protection in the most literal sense. Thank you. Thank you, counsel. At this time, would counsel from the state of Massachusetts please introduce himself on the record again. Good afternoon, your honors, and may it please the court. Tim Casey on behalf of the appellees. Your honors, Massachusetts has chosen as a matter of state law and policy to provide special education services to private school students that are more generous than what federal law requires. The Massachusetts legislature has directed that special education services be provided to both public and private school students alike in accordance with the regulations, guidelines, and directives of the relevant agency, the Department of Elementary and Secondary Education, or DESE. And DESE's regulation offers private school students special education services that are comparable to what public school students receive. But Massachusetts also has a provision of its state constitution which bars public funds from being used to maintain or aid primary or secondary schools, which are not publicly owned. So to strike a balance between Massachusetts' policy choice to provide more generous special education services while also complying with its own state constitution, DESE's regulation, which goes back to 1978, states that for private school students, special education services shall be provided at a public school or other public or neutral site. The issue here, there's an equal protection right that is created when the state decides to go beyond the idea. That's a federal right. Then how can then the state curtail that federal right by way of the regulation? Your Honor, I think it's very important to focus on the exact right we're talking about that appellants are asserting here. Because it is the same right for both substantive due process purposes and equal protection purposes and because in this court's and the Supreme Court's substantive due process cases, most notably Glucksburg, this court's recent decision in foot, you have insisted upon a careful description of the right at stake. So it is the right of parents to send their children to private school, which in this particular context means something very specific and limited. It means that the state and state governments cannot bar the operation of private schools and they cannot mandate attendance at public schools. That's the teaching of Pierce against Society of Sisters. But every case since Pierce has clarified that that obligation on the part of the state does not carry with it an obligation to fund or facilitate or make easy the choice to send one's children to private school. That choice has been made by the parents and the parents are either funding it themselves or through relatives or through loans, but the state is not paying for their tuition. What they're requesting is their special needs rights. Yes, Your Honor. Not the schooling itself. The state of Massachusetts gives parents with children who need special education services three choices. One, you can attend public school and avail yourselves of all of the special education services that are funded by the state in addition to federal IDEA funds. Two, you can exercise your right to send your children to private school and you can still receive state funded state special education services, but on the modest condition that you receive them and access them at a public school or other neutral site. Or three, you can choose to send your children to private school, as the plaintiffs have done in this case, and say, I don't want to go to a public school so I'm not going to choose to go to a neutral site so I'm going to choose to forego the state benefit that the state has offered and instead avail myself of special education services that are available through federal IDEA funds and private funding. That choice, those three options, that menu of options, does not amount to a substantive due process violation where the right at stake is a very limited, narrow right to send your children to private school, meaning only that the government cannot force you to attend public school and it cannot outlaw or ban the operation of private schools. The effect, again, there may be towns, let me just, an example, Andover, you have Phillips Academy and Andover High, which is public, and they're fairly close by and if a student goes to Phillips Academy, maybe you can bicycle over there and get your services and it's close. But there's other towns here in the state where the public school is miles away and it's totally unreasonable and that's, you know, there's people who are going to get affected that way also. Your Honor, that is like a de facto, it's creating that. It does impose a challenge for parents. That challenge is not of constitutional dimension. As this court said in foot, in attempting to establish a constitutional deprivation of this sort, it is not enough for parents to allege that the challenge policy makes their parenting more challenging. It may indeed be more difficult to send your child to a public school for several hours a week of special education instruction. But that, first of all, there's also an option to request of your IEP team or the Bureau of Special Education Appeals, which is the state agency that considers requests for special education services, to include along with the services that are provided on site, transportation services. So that... So are you saying that the fact that Massachusetts has created this service for all students does not turn what you are defining as a very narrow constitutional right to, if you opt to send your parents, I mean your child to private school, that's fine, nobody can prevent you from doing that. But what you get when you get there is what you get. Absolutely. Absolutely. The state's choice as a matter of legislative grace or as a matter of state policy to be more generous with special education services for private students than anything that is required under federal law cannot create a constitutional violation where one otherwise wouldn't exist. And maybe that's a good way to turn to the unconstitutional conditions argument, which I understand to be appellant's primary form of challenge. Let me ask just again, another example. What if you have a student from a very impoverished neighborhood who would go to normally a public school, which may be a good public school, but this student happens to be extremely talented academically and he gets a scholarship to go somewhere else in Massachusetts to a private school, you know, fully paid by scholarship. You might have parents who can't afford but for the scholarship, and let's say that's two, three miles away, I mean two, three hours away. It does create some issues depending on where you are or the circumstances of each individual person. The parents, again, I don't know their backgrounds, but for EH and HH, maybe they're hardworking individuals but they work extremely hard and their money goes to pay their mortgage and then to their kids and give them a good education. That's the situation. And again, it's case by case can be different, but it does create, you know, probably no two cases are going to be exactly the same. So Your Honor, just, so that's not the factual record we have here where public schools and public locations are less than a half a mile away from the plaintiffs in question. But in any event, this court addressed this very issue, Your Honor, in Gary S. It said these are the choices that parents have to make every day. When it was talking about Congress with respect to the federal IDEA, this court said Congress has simply done what state and local governments presumably do every day, provide lesser or more often no benefits or funds to private school students, and that leaves parents with a choice. It may be a difficult choice, but it is not an unconstitutional choice to choose between the pluses and minuses of the benefits of the programs that are provided at a public school, which are publicly funded because governments are understood and expected to fund primarily, if not exclusively, public education, versus the benefits of choosing private school and foregoing at least some public funds that might otherwise be available. That is a perfectly reasonable choice, and it is the one that the parents in this case made. Notwithstanding the regulation, they chose to continue educating their children at private school, which is absolutely their right, but it is not a constitutional right for them to make that choice and then to still receive state-funded special education services at the location of their choice. But that is effectively the right they are asking this court to recognize, even though no court, not the Supreme Court, not the First Circuit, has ever gone beyond this strand of the 14th Amendment parental right to say more than that it prevents governments from mandating attendance at public school or barring the operation of private schools. In order to give the plaintiffs the relief they are requesting, you would have to recognize as a matter of substantive due process, as a matter of unenumerated right, a right that goes far beyond anything that has been recognized by the Supreme Court or by this circuit. First, the same reasons that compel rejection of the substantive due process claim compel rejection of the equal protection claim, because they are not claiming discrimination on the basis of a suspect classification, they are claiming discrimination on the basis of exercise of a fundamental right. Here again, the fundamental right at issue is very limited. It's not implicated here. It certainly isn't violated here. So at most, rational basis would apply, which this regulation easily survives. I would also say that this regulation doesn't even conflict with a more threshold application of the equal protection clause, which is that it doesn't treat similarly situated comparators differently in violation of the equal protection clause. Private school students are simply not similarly situated with regard to public, vis-a-vis public school students, because public schools have, since there have been public schools, been funded with government funds in a way that private schools have not. And there's another comparator that plaintiffs rely upon, which are students who are public school contracts with a private school to provide those services. Those students, too, are not similarly situated to children whose parents choose to place them in private school. Those are a class of students whose needs for special education are so profound that the school district, the public school district, cannot meet the obligation to provide a free appropriate public education, or FAPE, within that school district's facilities and services. So that school, in order to meet its federal and state obligation to provide a FAPE, has to go outside the district, has to contract with a private school in order to ensure that that student receives the services they need. Those two classes of students, public school students and students who are placed in a private school but are still considered public school students, are simply not similarly situated to the private school students at issue here. Let me briefly, I ask holding counsel also, the amicus brief addresses Brown versus Board of Education, and here, obviously we're not facing racial segregation, but the amicus makes an argument as to another type of segregation when it comes to these comparables. So do you have anything to say about that? Your Honor... Is it page 20, 21, I think. Right. What I noted about the amicus brief is at page 2, where it said, although it would stretch the historical record to argue that these challenges rise to the level of the ones faced by the freedmen after the Civil War. That's what jumped out at me about the amicus brief. I think it's simply not accurate to equate these challenges with the challenges faced in the wake of the Civil War and Reconstruction with respect to schooling and segregation leading up to and including Brown versus Board of Education. This is an issue, this is a situation where parents retain three meaningful choices. Again, they can choose to send their children to public school, they can choose to send their children to private school, but access state-funded public services which they ordinarily wouldn't receive or be entitled to in other contexts, but they simply have to do so on the modest condition that they access those services at a public site, or they can choose to educate their children in private schools but forego state-funded special education services. They can still access federal IDEA funds and private funds, but they simply cannot access if they don't want to comply with the modest condition imposed by the regulation, then they will forego state-funded special education services. What would be the impact of a decision requiring that students in private school be given these services? It would be dramatic. Your Honor, I can't quantify it here, but it would be dramatic. Do you have any rough estimate how many students statewide would fall into similar circumstances as EH and HH? I don't, Your Honor. I don't know if it would be of assistance. I would assume probably in every private school there's going to be at least a few to say if they're conservative.  I think we can safely assume it's in the thousands, if not tens of thousands, if the court would like a 28-J letter on that issue. I can try to provide that information. So if this court were to issue a ruling like that and go farther than the Supreme Court has in Glucksburg or Munoz or the cases we've cited, or that this court has gone in cases like Gary S., then the state legislature would be faced with a policy choice. It could decide, and I don't think plaintiffs would contest that it can do this, it could decide as a policy matter to cease providing special education services to private school students, with the only limitation being that the federal IDEA would require the state to provide, to expend proportionate share funds for private school students. That's a lower amount without an individually enforceable right to a FAPE. Or the state could choose to provide the full complement of benefits on site. But that would presumably entail an enormous new financial expenditure. Let me ask along these same lines. To the extent you know. Do you know if, for example, New Hampshire, Maine, or Rhode Island, or sister districts have a similar situation, or this is just unique to Massachusetts? I don't know the answer to that, Your Honor. Opposing counsel. I do know that Massachusetts has these requirements both in the Anti-Aid Amendment, the relevant amendment to the Anti-Aid Amendment has been in effect since 1974. This regulation has been in effect in substantially the same form since 1978. So these are not a surprise. These are not new rules. They've been in effect for a long time. And the relief that the plaintiffs are asking for would entail pretty dramatically altering those longstanding rules. You wanted to address another subject. Do you want to do it within the next 90 seconds, respond briefly? Please go ahead. Thank you, Your Honor. You took your time. I think we covered it in substance, the Unconstitutional Conditions Doctrine, because I understand that to be the thrust of plaintiff's challenge here. What I wanted to say about that was that courts often talk about this doctrine as saying that the state cannot do indirectly what it is forbidden from doing directly. And so in a case like this, and in all cases, it essentially just begs the question that we've already discussed at length, which is what is it that the state is forbidden from doing directly? Here, the state is forbidden from doing directly only what we talked about under Pierce, barring the operation of private schools or mandating attendance at public schools. So that is all it is barred from doing directly. So for plaintiffs to prevail here, they would essentially, the state would be prohibited from doing more in this indirect unconstitutional conditions theory than it is prevented from doing directly. Again, the very limited nature of the right at issue here, which is not nearly broad enough to encompass the plaintiff's requested relief, causes their claims to fail under a substantive due process theory, an unconstitutional conditions theory, or an equal protection theory. Thank you, Counsel. Thank you, Your Honors. Okay, thank you. Thank you. Two minutes rebuttal. Please reintroduce yourself on the record, please, Your Honors. Sure. David Hodges for the Hellman's and Harrison's. And before your two minutes run up, start running, are you aware of New Hampshire, Maine, or Rhode Island have a similar situation, or you're not aware? We're there to provide special education services to all. Yeah, there is. Rhode Island, I believe, does, and I believe Minnesota does as well. Okay, so at least within our circuit, another state would be impacted by this decision. Well, I don't believe that Rhode Island has a similar restriction, they have a similar program. Okay, well, go ahead with your two minutes. Yeah, the first thing I want to note is that this is a 12B6 motion, so when there are different questions that are coming up about the location where children go to school, which the other side made some assertions about that were totally wrong that we've corrected, so that could be addressed over 12B6. The second, when it comes to any kind of administrative costs for this, that's also something that we can take care of, 12B6. They talk about that we can't safely assume what numbers are going to happen in the event that we get a decision in our favor, that's also for 12B6. So now that that's cleared out of the way. The problem I have is that we have case law that says the courts can't force state governments to fund education to a certain level, and the General Assembly here has made a policy determination as to what kind of funding it wants to make available for children with disabilities, as long as it's not contrary to the federal IDEA. Well, that would be an inadequacy claim, and that's not what we're arguing here. I mean, Massachusetts is... You're very broadly defining what you believe to be a fundamental right, and they're very narrowly defining it. Yeah, I think that their definition of it is incorrect. And, you know, in Council's rebuttal, he said several times, this is a modest condition. He concedes that it's a condition, and it's a condition upon a fundamental right. This court earlier in the year in Foote, when it was talking about the Pierce rights, said it was a broad and well-established right. The restriction here turns entirely... The right is the parent's right to direct the education of a child, or the parent's right to direct the upbringing of the child. What you're asking for is for the state to provide money because of the decision that you make regarding the upbringing of the child. The state has already made the decision to provide special education services in the regular educational environment to all children. The way it wants to do so is not contrary to federal law. It is contrary to federal law if you establish a generally available public benefit and say it's available to everyone except for those who exercise the constitutional right. That's what's happening here. You're not answering the question, though. Your argument turns on this question of whether transportation must be covered to ensure that original right. I'm not sure where that argument comes from. Your Honor, once a state endeavors to provide a benefit to everyone, it can't carve out something for other people. It's something that's worth taking a step back and looking at the broader picture here. It's just saying you can access this right here. No, it's not. It's a private school location. It's not saying that, Your Honor. Under the statute, all students are entitled to services in the regular educational environment to the maximum extent appropriate. It is only if the nature or severity of the disability is such that the student may be able to go out of their regular educational environment and receive special schooling, special classes, and be taken out of their regular educational environment. But for our students, they will never receive services in their regular educational environment because Massachusetts has promulgated a regulation that applies only to people who exercise a constitutional right and says that for those children, they may not receive services on their private school grounds. The way that it works is that if the government sends someone to private school, the government will consider that private school to be a neutral location. But if I, as a parent, exercise my constitutional right to send my child to private school, the state will not consider that to be a neutral environment, even if it is the same exact school. That turns entirely on the exercise of a fundamental federal constitutional right. It doesn't mean that we're asserting an entitlement to that. Massachusetts did not have to create this entitlement in the first place, but once it did, it had to do so in a constitutionally compliant way. The regulation does not do that, even if Massachusetts believes that its state constitution demands it. Let me ask you, I don't understand my handwriting, you mentioned this is a 12B6 ruling, what can you obtain if we were to remand the case by way of discovery? Because it seems to me this is really a purely legal issue. Sure, I mean some things that we would be interested in discovering, I don't believe that this would be something that we need to have. We take the complaint, or the district court takes the complaint, or now we take it in the light most federal to you. Yeah, right, so for example, it would be interesting to know that the state repeatedly states in their brief that regular educational environment does not mean the school. It would be interesting to know just how many students attending public schools or students attending private schools, where they're assigned by the government, how many of them receive services inside their school. We believe that it's pretty much all of them, yet when it comes to our students, they will never receive services inside their school. Likewise, we would also want to understand, for example, why a student can't receive services virtually, why that counts as... Let me ask you that, there's right now virtual services cannot be received even at a private school? They cannot. And it's only because that is where the student is sitting. And it's only because the parents have chosen to put that child into the private school. So, if I could make one final point, my friend on the other side said that the Unconstitutional Conditions Doctrine talks about the state not being able to indirectly ban attendance at private school, yet what does this regulation do? It dangles a valuable benefit before parents whose children have special needs and say the only way that you are going to be able to access this benefit is if you go to public school. The only way you'll be able to fully access it. If you don't, you're going to have a penalty on it. And the more severe a child's disabilities are, the more coercive it's going to be. If a child just has one service that he needs, you know, it might not be that big of a deal for the parents to take them back and forth. But the more disabilities the child has, the more of a penalty it's going to exact on the parents. Let me ask you, just going back, sorry, to your issue of virtual services. If your clients, if the state were to say, you leave the courtroom and an hour from now they call you and they say, we're willing to provide full virtual services at their schools, would the request be satisfied? Or you're requesting that it be a physical person who actually go there? I think that would certainly mitigate things for our clients. I can't speak for them individually about whether they would, you know, say that they were fully satisfied or not. But it would certainly be an improvement over what they have now, which is no services. Thank you, Counsel. Thank you. Court is adjourned until tomorrow, 9.30 a.m. Thank you very much.